Next, Marshall v. Nutter. Mr. Wolfe. May it please the Court. Thank you, Your Honor. This case is somewhat different than the one that you just heard previously, but I will have to warn you, I feel compelled in making the argument to use the terms Finder's Fee Act and table funding. However, this is a case where there's no question it was table funded in the traditional sense. Mr. Marshall refinanced his home through a reverse mortgage, through Savings First, a mortgage broker in Maryland. And the loan was closed in the name of Savings First as the lender, but the money was funded at the table and it was simultaneously transferred to James B. Nutter & Company. So in the traditional sense, this is a table funded loan. The issues raised in this appeal are much narrower than the issues in both the last case and the one you'll hear next. In this case, you're really called upon to make two decisions, to decide two things. The first is how would the Maryland Court of Appeals define what it means to be legally capable in a conspiracy to violate a statute, as opposed to a tort which involves a duty and a breach of that duty. And then the second issue you will have to decide is, in light of that definition of legally capable, was James B. Nutter legally capable of violating the Maryland Finder's Fee Act in this case? And the first question is really the key to everything, because we have... Could Nutter have ever, in this structure, could it ever have been a broker? It could. Why? It's the ultimate funder. It's the ultimate funder. And in some cases, it was supplied a loan by brokers, and in other cases, it purchased loans from lenders. But in either case, it doesn't matter whether those are correct factual circumstances. In either case, it was never a broker. It was the end. It was the object. It purchased the loans or either made the loans or purchased them. Well, first, Your Honor, in Maryland, there is one license that's issued by the Commissioner of Financial Regulation. It is the same license whether you're a mortgage broker or a mortgage lender. Nutter holds the license... It may or may not be so, but the answer to the factual question that I just asked is whether Nutter could ever be a function as a broker when it only had two roles. In this factual context, it either purchased the loan or it made the loan. And if it purchased the loan, it would not be the broker. If it made the loan, it would not be a broker. So, is that a correct statement? Under the two contracts that we have in the record that Nutter used with various mortgage brokers, that is correct. They would not have been the broker under either of those. And if they're not the broker, then we don't have any issue, do we? We do. Because the question is, can they conspire with a broker to violate the Finder's Fee Act? Well, if they could never be a broker in that context, then the requirement under Schenker that a co-conspirator must be legally capable of violating the law itself. If it's not a broker, it can't be capable of violating it. Well, and that's... we have to look at what Schenker says. What Schenker actually says is that... well, there are only three cases in Maryland that the Maryland Court of Appeals has either issued an opinion or has adopted other opinions. That's the Schenker decision, and the Bahari case, and the Atkinson case. The Plaintiff's the most recent, right? Right. Schenker cites the other two in its opinion. So, what Schenker says is that in a breach of fiduciary duty case, you have to be legally capable in order to be a conspirator. That is, you must owe a duty, a fiduciary duty, to the plaintiff. So, in a case that involves a tort where there's a duty and a breach, legally capable means that you have to have the duty. If you're a person without the duty, then no matter what was done by any of the conspirators, you couldn't be liable because you didn't breach anything, even if all their acts are attributed to you. That's what Schenker says, and the Bahari case and the Atkinson case were both tort cases that used the same definition of legally capable where there's a duty and a breach. This isn't a case where there's a duty and a breach. We have a violation of a statute that doesn't require a duty and a breach in order to have liability. If you are a broker and a lender, you violated the statute. You just have, and it doesn't matter. It doesn't say there's a duty to anyone. If you're the broker and the lender in the same transaction, you violated the Finder's Fee Act. That's just the case. But they can't be a broker. That's correct, Your Honor. This is the language of Schenker. It says, we agree and hold that a defendant may not be a judge liable for civil conspiracy unless that defendant was legally capable of committing the underlying tort alleged. And the underlying tort alleged here is that someone functioned, that another functioned as a broker and collected a Finder's Fee. But another always was either a lender or the purchaser of a lender. Right. Right, Your Honor. The Finder's Fee Act. The Finder's Fee Act has two purposes. The first purpose was described in the Conner case, which is, it was to divorce brokers and lenders from one another. You can't be related to each other and essentially find yourself. I think what Judge Wilner said in that opinion was mortgage masters can't take a loan application in its left hand, put it into its right hand, and collect the fee for finding itself as the lender. That's a violation of the Finder's Fee Act. Divorce the two. But the second thing. It can do that. It just can't pay itself for that. Well, I mean, there's the provision that says you can't collect the Finder's Fee, but there's also the provision that says you can't be the broker and the lender in the same transaction. So you would be violating it even if you get beyond the damage provision or the statutory damages that are involved. So on the one hand, if you ever do that, you're violating the act. And if you collect a fee, well, there's some penalties to be paid in addition to any damage you might have caused. So you are, even if you just do it. The damage section applies only to brokers. The damage section applies to brokers, correct. But the history of the Finder's Fee Act. Now, this is way back in 2004, I believe, was the first time that a court in Maryland determined that a person who is a mortgage broker and puts himself on the paper as the lender is violating the Finder's Fee Act. So the mere fact that you put yourself on the paper as the lender, even if you don't produce the money to close the loan, you're violating the Finder's Fee Act. And that has been held consistently. I don't know of any case where that wasn't held to be the case. And in the interim time, 2004, 2011, 2012, with the full knowledge that those decisions were out there, in fact, amendments were offered to the Finder's Fee Act because of those decisions, the Maryland General Assembly has rejected those amendments. And if you look in the joint appendix, the last two, in 2011, 2012, specifically put in provisions that use the term table funding loans as being exempt from this Finder's Fee Act provision. So in a table funded transaction, you always have a violation of the Finder's Fee Act. You always have a broker who puts himself on the paper as the lender, and the money comes from a third source and actually produces the loan. So you've got the violation, and the Maryland General Assembly says, we're using the Finder's Fee Act as the vehicle to stop table funding in Maryland. Maybe it happens everywhere else, and maybe everyone thinks it's a swell idea, but in Maryland they don't, and that's the policy, and that's what the Act addresses. So we have now this case where we have a situation which is different than Schenker because we have a violation of statute that doesn't have duty and a breach. There is one decision since Schenker that has come out that talks about that very distinction. That's the bankruptcy case, the In Re Min Vu Hong. I call it the Hong case because I don't really know how to pronounce all of that. And in that case, the bankruptcy judge went through that whole history, Schenker, and the cases cited by it, and the California case it came from, and all the cases coming up to it. It says, but in this case, we don't have a duty and a breach. So Schenker said that legally capable in the duty and breach context means you have to have the duty to the plaintiff, and the bankruptcy judge says we don't have that situation. So taking the intention of all those prior decisions, I have determined that in this case where you have a violation of the statute, legally capable means, and in this case it was the fraudulent conveyance statute, that you have to be a party to the conveyance made or the obligation incurred. Now, that's important because a party to a conveyance made is both the transferor and the transferee. Now look at the Fraudulent Conveyance Act. I believe it's 14 sections. It's the Uniform Act. And the five sections in the middle lay out the violations. You make a conveyance when you're bank insolvent. You make a conveyance for the purpose of defrauding creditors. It all relates to the person making the conveyance. The bankruptcy judge said, however, legally capable for the purposes of conspiracy, you would have to look to the parties of that transaction. Now, that doesn't mean the person who receives the property is necessarily violating the act. But in a conspiracy context, they have a prearrangement. They've made an agreement that this person's going to transfer the money or the property for less than full value, and you're going to receive it. And you can conspire to violate that act, even though the violations are all conveyor, conveyor, conveyor, conveyor. Take that analogy over to the Finder's Fee Act. You know, you can't have a loan transaction where there's a broker and a lender without a lender. There has to be a lender. Somebody has to put up the money. And in a table-funded loan, that's a third party outside of the broker-lender on the paper. So you have necessarily have someone out there who's putting up the money. The one who puts up the money doesn't violate the act. Well. It's just the broker violates the act. Right. But if he makes an agreement with the broker to structure it this way, so that it is a violation of the act, and he's then a party to that. He can't be sued. He's a lender. But remember, in the hung context, we're talking about the same sort of person. He didn't make a bad conveyance. He didn't defraud his creditors. But he was part of the transaction, and the transaction requires somebody to receive as well as somebody to give. And a brokered loan requires somebody to give the money. He is a necessary party to that transaction. You can't have a transaction without it. But the Court of Appeals of Maryland hasn't talked about necessary part. They hadn't talked about they couldn't have been carried out without him. It talks about the idea that the initial liability, the liability of the co-conspirator, co-conspirator has to have liability if there wasn't a conspiracy act, capable of actually violating the law. A lender could not violate, a real lender could not violate the broker law. But that came up in the context of brief fiduciary duty, where they said you have to have a duty. And they have never spoken to this. I mean, and that's really the point. There's a motion pending to certify this question to the Maryland Court of Appeals. If the Maryland Court of Appeals, or if anybody is going to interpret whether there's a difference between a duty breach case and a statutory violation case, it's the Maryland Court of Appeals who should make that call, not me or the bankruptcy judge or even this court. They're the ones who get to interpret what the statute means and what their law of conspiracy means, and they've never addressed it. And the only court that has addressed it, the Hong Court, says there is a difference. And under the Hong Court's analysis, which Maryland may or may not adopt, the person who's involved in the transaction can conspire. And it makes sense. In Maryland, the conspiracy law is premised on the fact that every person involved in the conspiracy is an agent of the other. The acts of the other are attributed to the conspirator. If the acts of Savings First in this case were performed directly by Nutter, Nutter would be in violation of the Finder's Fee Act. They don't because they've arranged in a conspiracy to get around that. But if Nutter brokered a loan to itself, it would violate the Finder's Fee Act. It is capable. It holds the license to do it. All it has to do is have the will to do it. Instead, they reach an agreement with brokers so that the broker takes the fall on the Finder's Fee Act. Now, is the Maryland Court of Appeals going to agree with me? I have no idea. But they should get to make that call. They're the ones who should determine. It's not the question that's not here. The question here is the role of Savings First. And there's an argument whether Savings First was a lender or broker, and your argument is they're a broker, and that Nutter facilitated that by being the lender, even though the documents say otherwise. But we don't need to reach that question because in this particular case, as the lender, they couldn't be liable under the Brokers Act. Well, Your Honor, Savings First was both the broker and the lender for the purposes of the Finder's Fee Act. Every case in Maryland that's decided has said, if you put your name on the paper as a lender, even if you don't put up the money, and you're the broker, you violated the act. You're the broker and the lender in the same transaction. Look, and I'm giving you that, but I'm not giving you the fact that the Nutter is a broker. No, they're not a broker. But if they had done the same thing that Savings First did, they would violate the act. My time is up, Your Honor. Okay. Mr. Ruskamp. May it please the Court. Your Honors, my name is Todd Ruskamp. I am here on behalf of the respondent, James B. Nutter and Company. I practice primarily in the Eighth and the Tenth Circuits. This is the first time that I've been before the Fourth Circuit. I appreciate very much the opportunity to make an argument to the Court. I've enjoyed the argument so far this morning. It's a different Court. The sun rises earlier on this Court. It seems. And the coffee might be a little bit stronger in this jurisdiction. Nonetheless, the issues that are before the Court, I think, are really just the propriety of what the District Court did below in granting summary judgment to James B. Nutter and Company with respect to the application of the Finder's Fee Act. This separate issue of certification, I'll touch on that very briefly. But frankly, that's not even the subject of the appeal. That was raised with Judge Bennett below, but that's not one of the points on appeal. It's sort of yet another request that this Court now certifies. I thought they filed a motion that we deferred on. They did, Your Honor, but not in the sense that they are challenging what Judge Bennett did under an abuse of discretion standard. It's really an independent request to this Court under the certification statute. And we could do it. I assume that the issues before us, whether we have to certify the Court, because they made a motion and we deferred on that motion. I think it would be better for you to stick with the matter. I will, Your Honor. Thank you. Just a bit about the background and the factual history on this. Nutter is a mortgage lender in Kansas City, Missouri. They were sued in first state court and it was removed to federal court. And the basic claim is that there were 46 mortgage brokers in Maryland that allegedly made loans that violated the Finder's Fee Act. And the allegation is that Nutter conspired with all 46 lenders to do that and therefore was conspiratorially liable for the violation of the act. The discussion with counsel already has highlighted the fact that nowhere in any of the pleadings was it alleged, or really throughout discovery, that Nutter was a broker with respect to any of these transactions. And ultimately, in his analysis, the district court looked at the evidence that had been gathered as part of the discovery process and agreed that there was no evidence or no proof that Nutter had acted as a broker with respect to any of the loans. Nutter didn't receive any of the fees for any of the loans that were part of the punitive class. And none of the brokers, of course, were part of this lawsuit. It was just a lawsuit that was filed against Nutter. After discovery, we did file a motion for partial summary judgment on this very focused issue about whether or not, under Schenker, Nutter could be sued, that is, whether or not it was legally capable of violating the act. And ultimately, after some additional procedural back and forth, Judge Bennett made the finding that he did, granting summary judgment in favor of Nutter. Now, the one procedural point that I wanted to mention very briefly is what the plaintiffs did in response to the motion for summary judgment, because I think it is reflective of the very points that we argue in our brief. And what they did was they submitted a Rule 56D affidavit saying that they needed some additional discovery to establish that, in fact, Nutter was a broker on these transactions. The very issue that was being raised with respect to the application of Schenker, they were, I think, fairly assessed, trying to address and trying to fix. That came right on the heels of the district court's order that was issued in Petrie. And there, Judge Nickerson found that Schenker applied on the legally capable issue. And so that procedural effort was made. Now, ultimately, Judge Bennett determined that Schenker did control. The court also determined that the affidavit wasn't appropriate, overruled the request for any discovery, and granted Nutter's motion for summary judgment, determining that there was no evidence that Nutter had acted as a broker, whether in the complaint or in the evidentiary materials that the court reviewed, and also ultimately following the Schenker analysis and some of the points made in the earlier precedent cited there, including the Sweeney case. Shortly after that, the plaintiffs dismissed the rest of the case. There was a separate count that had been pled, also based on conspiracy, to violate another state statute. And this appeal ensued. The long and the short of it with respect to this appeal, Your Honors, is that we believe that the district court got it right. We believe that the district court had ample authority, both the plain language of the statute, saying that it's brokers who are responsible and liable for charging fees that violate statutory language. We found guilty of ignoring the Maryland legislature if we were to extend the scope of the act to lenders who conspired with brokers because they only designated brokers to be the persons owing the duties and capable of violating the statute. I'm sorry, Your Honor, I missed the first part of your comment. The Maryland legislature indicated that brokers, as a class of persons, may not have duties under the act. And if we were to find that lenders in conspiracy with brokers, then we'd be extending the act to persons not described in the act, under some common law doctrine, which would seem to be an anomaly to ignore what the legislature defines as the persons who have the duty under the act. Right. I think it is an unnecessary and improper expansion of the act to take it as far as the plaintiffs have taken it or are trying to take it in this case. The language is clear. You've got some other state court decisions, the Sweeney opinion, for example, which emphasizes the narrow scope of the act and that it applies only to brokers. And then, of course, you've got the Schenker decision, which, granted, comes up in a different context, but the analysis is sound. And the application of it in this context is entirely consistent with the statutory language. This is not a situation where the district court has gone the other way and taken a statutory provision and cut it back beyond where the language would otherwise take it. Is there no applicability to lenders under the Finest Fee Act? In other words, it does not impose upon lenders any obligations? Well, I think based upon the record that we have in this case, Your Honor, it certainly doesn't impose conspiratorial liability for taking a fee that you never received, which is essentially what this claim is. So you're looking at Section 804E? I am, Your Honor. Not 805? Right. So 805 has no applicability here? Well, I think that applies to brokers as well, Your Honor. One of the things that I suppose the plaintiffs were suggesting with the Rule 56 affidavit that may be a basis for liability, it's not this case, but if the lender was also brokering loans in the state and just didn't receive a fee for doing it but was conspiring with other brokers to, in effect, do their work, then I suppose that both lender and broker may have some liability under the Act. But in this case, that isn't the case. The record is clear with respect to the loans that were made. But for the belated effort on the affidavit, there had never been any claim of a broker relationship by Nutter, and, in fact, the facts don't indicate that there was. So there are no 805 implications in this? I don't believe so, Your Honor. They fail you to disclose anything like about lending none of that to you? Well, I mean, the documentation for the loan, Mr. Marshall's loan in this case, was a document that showed savings first being both the broker and the lender in this case. And so it's our position, certainly, that Nutter didn't have a responsibility or an obligation under 805 to make some disclosures in that respect. So could savings first, I guess what I'm trying to understand, could savings first be in violation of the Finance Fee Act? They were. But you're saying that Nutter couldn't conspire with them? Yes. Because it's a broker and cannot be accountable for the underlying action on the 804. But if you brought in 805, you could because that applies to the lender. Well, what I'm saying is the liability that's been asserted in this case is under 804E, and that is necessarily dependent upon Nutter being a broker in the transaction, we believe, under the Schenker analysis, and that for this claim that liability does not lie for that legal reason. As limited as the way we're reading it? I mean, it's pretty limited. I mean, it would really cut out a lot of things in the way it's read if you're going to read it as what actually you could do, as opposed to what you'd be capable of doing. Yeah. You know, I mean, ultimately, each situation and each case is going to have to determine how Schenker might be applied. So in this case, we have the analysis that we think is sound in Schenker. Of course, the court made a determination that there was no common law of fiduciary duty that was owed to the shareholders by the purchasers of the company at issue, which, frankly, seems intuitively right. If you're a purchaser of an entity... Well, it's a cleaner case. Well, it certainly makes sense. And so the challenge, then, is you say, well, gee, Schenker seems like it's narrowing the law a little bit, but it's narrowing it in what seems like a common-sense way, right? Why don't we just ask the Maryland Court of Appeals? Well, because I think we've got very clear guidance from Schenker exactly what the Court of Appeals thinks. They've articulated in that opinion an analysis that makes sense. Even in this context, there may be situations where a lender, like a nutter, that functions as a broker may not receive any money, but it complies with other brokers to receive money, and therefore it may have liability. So there could be a factual scenario where even in this context, Schenker wouldn't apply. It's not this case. And there may be a scenario in the breach of fiduciary duty case on the common law side where a trial court or a court of appeals may say, yes, but this is different than Schenker for different reasons. And what I was suggesting was that Schenker purchaser scenario intuitively makes sense, that you don't want to say to every purchaser in a transaction, hey, by the way, you owe fiduciary duties to the shareholders of the entity that you're negotiating with or negotiating against. Here it also intuitively makes sense that nutter as the lender, as the facts establish did none of the brokering, shouldn't be liable under a statute that applies only to brokers, particularly when it didn't get any of the money and it didn't otherwise do anything that is within the bounds of the statutory language. And so over the long run or over the longer term, I suppose there will be some situations where Schenker might go one way and others where it will go another. But, I mean, we have guidance from the court of appeals, both on this legal issue. We have it on how the act, the Maryland Finders Fee Act, should be applied, and we have the clear language of the statute. There really isn't anything more that's needed in our view, and we certainly don't think that at this late date with all that's been invested by the district courts and the parties and even the state court, we went on that sojourn in the Crane case, and we talked a little bit about that in our brief, and the state court didn't choose to send it up. We really think that it's not appropriate to send this matter today to the Maryland Court of Appeals to get what is otherwise, in our view, a clear reading on the law. All right. Your Honors, I think I'll yield the rest of my time unless there's any questions. Thank you very much. Mr. Wolf? Thank you. Judge Nguyen, I want to see if I can clarify your question before. Schenker is, we tend to look at cases and we turn them into caricatures of themselves. Schenker actually is a very specific thing that says very specific principles of law. Schenker was a case in which shareholders were suing the directors of a corporation for breach of their fiduciary duty in a cash-out sale of the corporation, and they were trying to extend that liability for that breach to the investors, the hedge funds and other investment vehicles who helped to fund the buyout. So what the Schenker court, and those other entities, I think they call them the non-director defendants, the hedge funds. I'm going to call them because it's easier to distinguish. The hedge funds were all corporations and limited liability companies. They're not directors of a Maryland corporation. It can't be. They can never have the fiduciary duty to the shareholders because they can't be directors. They can't be. They're legally incapable of having that duty. And that's exactly what Schenker said. They can't have the duty. They don't have the duty. They're not legally capable of having the duty. They can't be brought in through conspiracy. Take the case we have now. Okay. It's not a duty breach type of case. But if we look at it, there can never be a brokered loan without somebody funding it. There can never be a brokered loan without somebody putting up the money. It is by definition. It requires two parties. That's what the statute is. And in Maryland, under the Mackey decision, every act of a conspirator is attributed to every other conspirator. The acts of savings first are attributed to Nutter. They just are as a matter of Maryland law, and that's what applies here. You're talking about the duty on the 804E? All the acts of savings first. Because remember, it's not a duty case. If you're in this, if you're. . . 804 creates a duty, and 807 gives the penalty. But we weren't suing under a duty. It doesn't extend a duty to anyone. It just says if you occupy two positions, you're in violation of the statute. There's no duty created. There's no care that you have to give. If I'm a broker and I'm a lender, I'm in violation. And under Maryland law, because there was an agreement in advance that I'll put up the money in this loan. Hold it, hold it. Let me just. . . I don't know why we're playing so much with the words and not getting to the real meanings, but it says a mortgage broker may not charge a finder's fee. That's a duty. This is 804E. And 807 tells you if you do, what happens. Are you coming from a different section? No, no. I had two sections marked, and I turned to the wrong one, Your Honor. I'm just. . . I don't have my glasses, but. . . In which the mortgage broker or an owner, part owner, partner, director, officer, or employee of the mortgage broker is the lender or an owner of the lender, right? So if I am the broker and a lender and I charge a finder's fee. One question I'm challenging you on. You said there was no duty here in response to Judge Wynn's question. It can establish a duty. And there is a duty here. It can establish a duty for tort purposes. No, it's a statutory duty. And it says a mortgage broker may not charge a finder's fee. Right. Okay. So if I occupy those positions, I'm in violation. Even if the borrower says, I don't care. The one position, the subject of the sentence, is a mortgage broker. No, it requires me to also be the lender or an officer, director, or some other entity controlling or owning a lender. I've got to have both. If I'm a mortgage broker and I charge a finder's fee, that's fine. That's what the statute allows. If I'm a mortgage broker and I charge a finder's fee and I'm also the lender or an officer or, you know. . . I understand. So I've got to occupy both positions. Whatever the statute provides. And there's definitions everywhere and so forth. But 804E is focused, directed at mortgage brokers. And mortgage brokers have the duty. And you're saying because there are other people that have to contribute to make that possible, they also have some. . . I don't know what your argument is. Well, what I'm saying is that especially the Hong Court, the only court to ever look at a statutory violation like this, has said that in a statutory violation, you look to the statute. . . Is there a citation to that case? Is that in your brief? It's in both of our briefs. We both relied heavily on that. Okay. Thank you. Thank you. But in the finder's fee area, too, it says a finder's fee can only be imposed by a broker. There's nothing about the lender. Well, yeah, it is. But it's a somewhat complicated statute. I mean, 12809, for instance, says that you can't use the Finder's Fee Act as a subterfuge for violating 12108, which is the limitation on points that a lender can charge. So imagine the situation where a lender can't charge points, but they set up a scheme exactly like this so that some points could be funneled back to them. It just seems like the legislative intent is really focused on the broker. It defines it a finder's fee with limitation to the broker. It talks about the duty in 804E with respect to the broker. The damage provision is focused solely on the broker, and there seems to be an absence of any extended liability. Well, I don't disagree that there is a focus on the broker and broker fees. The purpose of it was to allow these things to be paid and not violate the lender's obligations. However, the intention of the statute as it's evolved from 2004 to the present is that table funding is one of the acts that this statute is used to prevent in Maryland. The legislature has made that clear three times now. And so to say we're going to allow table funding or we're going to look at table funding, we're not going to hold the table funding parties liable, even though the legislature says we don't want it here. You could have sued for savings. If you thought they violated the law, you could have sued them. The reality of the world, Your Honor, is that mortgage brokers arise and fall in a day's notice. They have no money. They can't be sued. They're judgment-proof. It's really probably one of the reasons you set these things up this way. And if we don't extend it to the lenders, if the legislature says table funding is okay and it's all right to leave people hanging, well, that would be it. But Maryland ought to make the call. Thank you. Thank you, Mr. Wolf. We'll come down and greet counsel and then proceed on to the last case.
judges: Paul V. Niemeyer, James A. Wynn, Jr., Robert J. Conrad, Jr.